AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❏ Original ❏ Du

CLERK'S OFFICE
A TRUE COPY
Jul 31, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No. **25-M-480 (SCD)** |
| a pink Apple iPhone assigned FBI Evidence Number 1B224 | ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____8-14-25_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Stephen C. Dries, U.S. Magistrate Judge_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:   _____7-31-25, 8:50 a.m._____          *Stephen C. Dri* [signature]
                                                                          *Judge's signature*

City and state:   Milwaukee, Wisconsin          Stephen C. Dries, U.S. Magistrate Judge
                                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is a pink Apple iPhone assigned FBI Evidence Number 1B224 ("Device")." The Device is currently located at the FBI's Milwaukee Field Office, which is located in the Eastern District of Wisconsin.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

All records on the Device described in Attachment A that relate to violations of 18 U.S.C. §§ 371, 511, 514, 1001, 1028A, 1956, 2312, 2313, 2321, and 2(a) and involve TASHAY NORTHERN, DIAUNTE D. SHIELDS, LASHAWN DAVIS, JR., BRANDON MULLINS, JUSTIN NORTHERN, MICHAEL NORTHERN, and other co-conspirators known and unknown, since January 2019 including:

a. Information about stolen vehicles, including but not limited to photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to vehicle identification numbers and titles, records related to the transportation of vehicles, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme;

b. Information about the existence, scope, members, and steps taken in furtherance of the conspiracy;

c. Information about false statements made by Tashay Northern on or about June 26, 2025;

d. types, amounts, and prices of vehicles purchased, sold, and transported, as well as dates, places, and amounts of specific transactions;

e. any information related to sources of stolen vehicles (including names, addresses, phone numbers, or any other identifying information);

f. any information recording the subjects named above's schedule or travel from January 2019 to the present;

g. Evidence indicating how and when the device, call number, and email address was accessed or used, and by whom, to determine the geographic and chronological context of device access, use, and events relating to the crimes under investigation and to the account owner; and

h. Evidence indicating the device owner's state of mind as it relates to the crimes under investigation.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin



**CLERK'S OFFICE**
**A TRUE COPY**
**Jul 31, 2025**
**s/ JDH**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br> )<br>**a pink Apple iPhone assigned FBI Evidence** )<br>**Number 1B224** ) | Case No. **25-M-480 (SCD)** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❒ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 511, 514, 1001, 1028A, 1956, 2312, 2313, 2321, and 2(a) | Conspiracy to violate the laws of the United States, transportation of stolen vehicle, sale, receipt, possession, or concealment of stolen vehicles, transportation, presentment, or production of fictitious obligations, false statement |

The application is based on these facts:

See the attached affidavit.

❒ Continued on the attached sheet.

❒ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SHANE HOFFMANN
Digitally signed by SHANE HOFFMANN
Date: 2025.07.30 11:49:35 -05'00'

*Applicant's signature*

Shane Hoffmann, Special Agent (FBI)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: **7-31-25**

*Judge's signature*

City and state: **Milwaukee, Wisconsin**

Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since approximately September 2015. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal laws. Through investigations and training, I am familiar with how cell phones and other technical data can be used to commit federal offenses, and I have authored numerous affidavits relating to cellular devices, cell site location information, and other technical data.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a pink Apple iPhone assigned FBI Evidence Number 1B224 ("Device"). The Device is currently located at the FBI's Milwaukee Field Office, which is located in the Eastern District of Wisconsin.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation of a criminal enterprise led by DIAUNTE D. SHIELDS, which has stolen, transported, brokered, or sold hundreds of stolen vehicles across the nation. This investigation began in the middle of 2022. In total, the Federal Bureau of Investigation (FBI) identified and attributed approximately 700 stolen vehicles to this car theft ring, which involved stealing, altering, reselling, concealing, brokering, or buying stolen vehicles.

7. More specifically, the investigation has revealed a nationwide criminal enterprise involved in a variety of illicit activities. The hubs of their conduct include Milwaukee, Wisconsin, Chicago, Illinois, and Atlanta, Georgia. Chief among the enterprise's activities is the theft and resale of high-end stolen automobiles including Dodge Ram TRXs, Dodge Challenger Hellcats, Cadillac Escalades, Chevrolet Corvettes, Jeep Trackhawks, Jeep SRTs, GMC Yukons, and others. The enterprise acquires the vehicles from a variety of sources, including stealing them from private properties, public parking lots including airports, rental car facilities, Turo rentals, dealerships, and assembly plants. The vehicles are often stolen utilizing key reprogramming technology. Investigators have also learned that targets utilize GPS tracking technology to track vehicles targeted for theft. To date, investigators have linked hundreds of stolen vehicles to the group with a value exceeding $10 million dollars. Although the vehicles are often sold well below market value, the actors profit significantly from the resale of vehicles.

8. Law enforcement has identified DIAUNTE D. SHIELDS as a leader of the organization with activities dating back to at least 2019 and continuing through his arrest in Illinois on November 29, 2023. Throughout the years, numerous individuals have aided SHIELDS in his operation, including in the interstate transport of vehicles. SHIELDS has shown that he will

2

transport stolen vehicles either through the use of commercial transport companies, or via the use of "runners". Many of SHIELDS's facilitators and purchasers have been identified as part of law enforcement's ongoing review of electronic evidence that was collected on November 29, 2023, during search warrants targeting SHIELDS. One of those facilitators and purchasers is TASHAY NORTHERN.

9. On June 24, 2025, a Grand Jury in the Eastern District of Wisconsin returned an indictment charging numerous members of this criminal enterprise with violations of 18 U.S.C. §§ 371, 511, 514, 1001, 1028A, 1956, 2312, 2313, 2321, and 2(a), and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846. One of those defendants is TASHAY NORTHERN.

10. A warrant for her arrest was issued. On June 26, 2025, NORTHERN was arrested by law enforcement at her residence located at 1460 32nd Street South, #502, Fargo, North Dakota. Search incident to that arrest, the Device was recovered from NORTHERN's person.

11. On June 26, 2025, law enforcement interviewed NORTHERN who acknowledged that her cellular phone number was 708-341-9108, and that was the number she used to communicate with a person she identified as "Mike" about vehicles for sale. NORTHERN advised that the father of her children, Jaquan Gatewood, got three cars from an individual that she knew as "Mike". The first car was believed to be purchased in 2021. "Mike" would communicate via text to NORTHERN and Gatewood regarding vehicle's that he had for sale. NORTHERN believed "Mike" was selling vehicles with salvaged titles. NORTHERN also indicated that her two brothers purchased vehicles through "Mike" with one brother picking the vehicle up in Milwaukee, Wisconsin, via arrangements made by NORTHERN. NORTHERN advised she usually paid between $7,000 to $8,000 per vehicle. Shortly after picking up a vehicle in Milwaukee,

3

NORTHERN's brother had it taken by law enforcement.  NORTHERN denied knowing the name DIAUNTE SHIELDS and did not identify SHIELDS in a known image.

12. Subscriber records from Verizon for phone number 708-341-9108, believed to be the phone number linked to the Device, showed an associated name of "TAHAY NORTHERN" and an activation date of October 24, 2019. Phone number 708-341-9108 is registered to "Tahay Northern" with an address of 4561 Urban Plains Drive, Fargo, North Dakota with email addresses brittanycollins570@yahoo.com and tashayn@gmail.com.

13. The United States's investigation, including text message conversations from SHIELDS's phone with TASHAY NORTHERN's phone number 708-341-9108, have revealed that NORTHERN has purchased stolen vehicles from SHIELDS on multiple occasions and assisted in the registration of stolen vehicles for SHIELDS.  A review of SHIELDS's iPhone that was collected pursuant to a warrant on or about November 29, 2023, shows communication with NORTHERN spanning July 3, 2022, through October 10, 2023.  NORTHERN is listed in SHIELDS's as contact "Bre (Ty Daughter)". In the indictment, NORTHERN was charged in Counts 1 and 37 with violations of 18 U.S.C. § 371 (conspiracy to violate the laws of the United States) and 18 U.S.C. § 2313 (sale, receipt, possession, or concealment of stolen vehicles). The evidence shows that NORTHERN purchased or coordinated the purchase of at least 4 stolen vehicles from SHIELDS, and that NORTHERN registered or attempted to register at least 4 additional stolen vehicles in North Dakota at the direction of SHIELDS.

**Vehicle 139A: Gray 2020 Jeep Grand Cherokee Trackhawk**

**(Manufactured VIN: VIN 1C4RJFN9XLC373340)**

14. Between on or about October 14, 2021 and October 18, 2021, Vehicle 139A was stolen from the Milwaukee Mitchell International Airport, according to a Milwaukee County Sheriff's Office report.

15. On or about October 17, 2021, SHIELDS from devon5578@icloud.com sent an email to NORHTERN at email tashayn@gmail.com containing an attachment for Texas temporary operating permit 342095F, based on Apple iCloud records for SHIELDS's account. The VIN listed on the permit was 1C4RJFN99LC298162, the fraudulent VIN later identified for Vehicle 139A, which Stellantis, an auto company, advised was fraudulent.

16. On or about November 3, 2021, Vehicle 139A was titled in North Dakota in the name of TASHAY NORTHERN using the fraudulent VIN referenced above, according to records from the North Dakota Department of Motor Vehicles. The vehicle was registered using a fraudulent Georgia title. Upon inspection days later, investigators found that the actual VIN was manufactured VIN for Vehicle 139A—the vehicle that had been stolen from the Milwaukee Mitchell International Airport.

17. On or about February 9, 2022, investigators from the Milwaukee County Sheriff's Office contacted NORTHERN at telephone number 708-341-9108. NORTHERN stated that she purchased Vehicle 139A in October 2021 via an online ad when she was in Atlanta, Georgia. She advised she bought it from a Hispanic male for $20,000 and paid via a personal check. NORTHERN advised that she lent the vehicle to a friend of a friend, but does not recall what their name was. NORTHERN said that she was informed that the friend had crashed the vehicle. At the time of its theft, the approximate value of Vehicle 139A was $87,000.

**Vehicle 084: Black 2018 Jeep Grand Cherokee Trackhawk Supercharged**

**(Manufactured VIN: 1C4RJFN99JC224270)**

18.     On or about November 29, 2022, the owner of Vehicle 084 reported to the Chicago Police Department that his vehicle was stolen from his parking garage, located at 5035 South East End Avenue, Chicago, Illinois, sometime between 9 p.m. and 11 p.m. on the previous day. The victim had purchased Vehicle 084 at Bettenhausen of Tinley Park, Illinois on November 15, 2022, and had a temporary plate displaying 003487A77.

19.     Based on text messages found in co-defendant NAKIYA WRIGHT's Apple iCloud account, WRIGHT and SHIELDS had discussed the formation of an LLC called Hair Art Studioz LLC.

20.     The day after the theft of Vehicle 084, co-defendant GLENN LARSEN sent DIAUNTE SHIELDS four photos of Vehicle 084, which ad a plate holder with the word "BETTENHAUSEN" on it and a temporary plate ending in 87A77. Based on messages, Vehicle 084 appears to have been transported to the Home Depart at 4155 North Port Washington Road, Milwaukee, Wisconsin, and that SHIELDS had purchased that stolen vehicle from LARSEN, as SHIELDS complained of damage to the back passenger side. Surveillance video shows that a vehicle consistent with Vehicle 084 was pulled into a garage associated with SHIELDS at 5206 North Hopkins Street, Milwaukee, Wisconsin. Co-defendant LASHAWN DAVIS's phone also contained a photograph from December 2, 2022 with Vehicle 084 inside of the garage of that address.

21.     Based on messages and business records, DIAUNTE SHIELDS coordinated with co-defendant GEOFFREY HARVEY to resell the vehicle, and had Vehicle 084 transported from Milwaukee to Orlando, Florida between December 8, 2022 and December 12, 2022.

6

22.     At the same time on December 12, 2022, SHIELDS arranged with co-defendant BRANDON MULLINS to provide him a fake title for Vehicle 084. SHIELDS provided MULLINS information for the fake title including the fraudulent VIN, the miles ("13k miles"), the color ("Blk"), and the business "Hair art studios llc." MULLINS responded with a picture of a Georgia title with the fraudulent VIN for Vehicle 084, an odometer reading of 13,091 miles, and the name Hair Art Studios LLC. After paying MULLINS by Cash App, SHIELDS then instructs MULLINS to ship "the tee's" to "Tashay NORTHERN 4561 Urban Plains Dr S Apt 206 Fargo ND 58104." MULLINS sent a shipping confirmation to SHIELDS the next day.

23.     Between December 15, 2022 and December 16, 2022, TASHAY NORTHERN, using phone number 708-341-9108, confirmed by text to SHIELDS's phone that she received the package from MULLINS, and SHIELDS and NORTHERN discuss NORTHERN getting title, plates, and registration for Vehicle 084 in North Dakota. SHIELDS instructed NORTHERN as to what documents to bring to the DMV and what to say, namely, that she owned the car in Georgia and she wants to move the title over to North Dakota, and that the owner is Hair Art Studios LLC, EIN 92-1160987. NORTHERN wanted confirmation that this wouldn't be done in her name. At one point during NORTHERN's efforts, she sent a picture of a document from a North Dakota Motor Vehicle Department with the message, "She Said We Need This Form Showing That The Business Is In Good Standing & Thats The Price For The 2018 1,423."

24.     After NORTHERN was unable to do so, SHIELDS then attempted to have another subject register Vehicle 084 in Arkansas. On December 27, 2022, SHIELDS texted with NORTHERN and instructed her to send the "2018 title" to Little Rock, Arkansas in the name of the other subject. NORTHERN confirmed that she did so by sending a receipt with the tracking information.

7

25.     Less than three months later, on March 23, 2023, Vehicle 084 crashed in the area of 9200 Leevista Boulevard, Orlando, Florida. The police reports lists "Kamoi T SMITH" as the driver. The vehicle displayed fraudulent VIN 1C4RJFN97JC229743 and Arkansas plate AMK18F.

26.     During the communications about Vehicle 084, TASHAY NORTHERN was using call number 708-341-9108.

**Vehicle 309: Red 2020 Dodge Charger Scat Pack**

**(Manufactured VIN: 2C3CDXGJ4LH111552)**

**and**

**Vehicle 411: White 2022 Dodge Durango SRT 392**

**(Manufactured VIN: 1C4SDJGJ1NC186932)**

27.     On May 22, 2023 between 1:30 and 2:00 a.m., Vehicle 309 was stolen from the Comfort Inn, located at 6080 Gurnee Mills Circle, Gurnee, Illinois. That day, Tashay NORTHERN using call number 708-341-9108 texted SHIELDS and said: "Alright Cool I Was Really Lookin Like A Charger Tho," after NORTHERN has been asking for cars at a good price.

28.     A couple days later on May 25, 2023, NORTHERN using call number 708-341-9108 asked if SHIELDS had any vehicles texting: "Anything Around." SHIELDS responded with three photos of Vehicle 309 and the description: "7500 21 4k miles" followed by "Scat." TASHAY NORTHERN texted: "Yeah Ima Grab It," confirming that she was going to buy Vehicle 309. SHIELDS asked when she was going to get it because "it won't last lol," and Tashay NORTHERN said she had a graduation coming up so could be there on Sunday. Ultimately, they agreed to a price of $7,000 for Vehicle 309 with a $1,000 down payment. SHIELDS provided the Cash App handle "Jimmy Oven," and NORTHERN confirmed that she sent the down payment from Cash App handle "jaydontknow300," similar to her brother Justin Northern's Instagram account

8

"jay_dontkno." That transaction is confirmed by the Cash App records showing a transfer of $1,000. NORTHERN confirmed that she would be there on Sunday.

29. During the communications about Vehicle 309, TASHAY NORTHERN was using call number 708-341-9108.

30. On May 27, 2023, at about 10:00 a.m., the victim noticed Vehicle 411 missing from his driveway, and checked his security cameras which showed an unknown black male wearing all black clothing and a red ski mask over his face walk into his front yard at 2:00 a.m., the security cameras were repositioned, and then the vehicle was gone. There were no signs of forced entry.

31. Later that day at 2:17 p.m., SHIELDS sent two photos of Vehicle 411 to TASHAY NORTHERN, and NORTHERN asked about the price and if the vehicle would be ready the next day. NORTHERN "loved" the photos, and asked: "What's The Ticket On That? & You Be Ready Tomorrowv."

32. On May 27, 2023, SHIELDS asked NORTHERN: "You want both for sure," referring to Vehicle 309 and Vehicle 411, and NORTHERN responded, "Yeah For Sure For Sure." SHIELDS told NORTHERN: "Ok, the title for the scat is messed up.  So I gotta to get that fixed and get another for that so can we shoot for Tuesday I can have both done and ready to go . . . . Problem is they are in Chicago and hw we gone do that part?" NORTHERN said she can come to Chicago. NORTHERN asked for the price for Vehicle 411, and SHIELDS said: "We good at 65," suggesting a price of $6,500.

33. On May 31, 2023, NORTHERN indicated that she was flying in the morning and would land at 9:00 a.m. the following day, in relation to picking up Vehicle 309 and Vehicle 411. On June 1, 2023 at 7:40 p.m., just before the handoff between SHIELDS and TASHAY NORTHERN, SHIELDS told NORTHERN: "Heading south now I just had to let traffic die down,

9

I'm finna get some tags they are no registered so b careful." SHIELDS provided a meeting address, and NORTHERN said she was 39 minutes away, eventually confirming that she arrived. The following day on June 2, 2023, NORTHERN sent a message to SHIELDS confirming that she arrived (likely back in North Dakota): "Just Made It."

34. On June 2, 2023, TASHAY NORTHERN's brother Justin Northern had an Instagram conversation with another person, and said: "yeah me and mike just bought scat and srt," referring to Vehicle 309 and 411 and his brother Michael Northern, followed by "we got it somebody bre know 7,500 and 7,000." "Bre" is the nickname for Tashay NORTHERN. Cash App records show that Michael Northern sent SHIELDS $2,000 from Cash App handle "Michael Northern" to SHIELDS's Cash App handle "Jimmy Oven."

35. On June 7, 2023 at about 8:30 p.m., officers searched Vehicle 411 and found a firearm, 173 fentanyl pills, marijuana, methamphetamine, and a stolen Illinois license plate. An officer observed Michael Northern at the Taco Johns restaurant nearby on the phone and watching officers during the search. Michael Northern told an officer that he was driving the Dodge Durango, and that all of the drugs and the gun belonged to him. After the vehicle was towed, the tow company noticed two different VINs and notified police, who then returned and found another VIN under the front passenger seat of Vehicle 411.

36. On June 12, 2023, Vehicle 309 was recovered from 2406 9 ½ Street North, Fargo, North Dakota, and TASHAY NORTHERN arrived at the location and tried to retrieve the title. Immediately afterward, TASHAY NORTHERN sent three photos of Vehicle 309 with the fraudulent VIN, temporary plates, and fraudulent Georgia title to SHIELDS, saying: "They Took It Said If Everything Check Out They A Give It Back 🙎🏾 ." SHIELDS responded: "They took the cars ? Oh wow." NORTHERN replied, "The Red One." SHIELDS then responded: "Wow ok, I

10

will do the bill of sales tonight but they got to put that joint up until it's registered." Tashay NORTHERN asked if SHIELDS thought the police would give Vehicle 309 back, and SHIELDS said: "They might I'm not sure. They might not be all the way on them like in the city so it's a chance ask them what do they need to get it back." SHIELDS asked if the owner was "hot," and TASHAY NORTHERN said: "Naw This My Lil Brother." TASHAY NORTHERN added: "They Say If Everything Checks Out Cause They Not Finding It In The System." The following day, Tashay NORTHERN circled back to SHIELDS for the bill of sale, writing: "Hey Can You Get That To Me Today," and provided the name of her brother "The Name Justin Northern."

37.    On June 13, 20203, TASHAY NORTHERN told SHIELDS that the police "Saying The Cars Going Back To The Owners." TASHAY NORTHERN forwarded a one-page document signed by a local detective that listed Vehicle 309 and described the additional VINs located. SHIELDS responded: "They went far to find that" and "On the engine block is dam near under the car." SHIELDS asked if her brother was arrested, and TASHAY NORTHERN admitted that she lied, saying: "We Had Just Told Them It Was A Graduation Gift From They Pops."

38.    During the communications about Vehicles 309 and 411, TASHAY NORTHERN was using call number 708-341-9108.

### Vehicle 263 / Vehicle 340: Black 2021 Chrysler 300 S
### (Manufactured VIN: 2C3CCABG9MH549643)

39.    On August 7, 2023 between 1:30 a.m. and 9:45 a.m., Vehicle 263 was stolen from 250 East 29th Street, Chicago, Illinois. SHIELDS's phone contains an image – IMG-4474.HEIC – timestamped at 1:50 a.m. of Vehicle 263's Manufactured VIN with a geolocation of East 29th Street and South Indiana Avenue in Chicago. Vehicle 263's Manufactured VIN was also identified on the AutoPro-65961 programmer recovered during a search warrant on November 29, 2023 from

11

Unit 413 of the CubeSmart storage, located at 2801 Harrison Street, Bellwood, Illinois, and shows that the Manufactured VIN was run on the programmer at 2:01 a.m.

40.     At 2:15 a.m., SHIELDS sent 3 photos representative of Vehicle 263 to TASHAY NORTHERN at phone number 708-341-9108 listed under contact "Bre (Ty Daughter)" writing: "No roof tho clean with 20k miles 2022." SHIELDS and Tashay NORTHERN agree they will "make it happen."

41.     On August 10, 2023, DIAUNTE SHIELDS and TASHAY NORTHERN discussed picking up Vehicle 263. NORTHERN asks: "Oh Okay It's in Milwaukee?" SHIELDS confirms, and NORTHERN says she will let him know when she can head to Milwaukee. NORTHERN says she is going to book a train ticket to Milwaukee. The next day, NORTHERN texts SHIELDS: "I Can Send 5 More Rn?" She then confirms that she sent the money. On August 12, 2023, Justin Northern, TASHAY NORTHERN's brother, using Cash App handle "Jay" send SHIELDS, using Cash App handle "Jimmy Oven," $500 with a note "300 s" with a car emoji.

42.     On August 15, 2023, Tashay NORTHERN communicates with SHIELDS about the pickup of Vehicle 263, writing: "Hey He Gone Make It There By 3." SHIELDS asks: "He got the bread," and NORTHERN confirms that he has the money. Tashay NORTHERN and SHIELDS discuss a license plate for Vehicle 263, and SHIELDS says that he can use his dealer plate, but they would need to mail the dealer plate back. A minute later, SHIELDS tells Lashawn DAVIS by text: "He will be at the train by 3." Tashay NORTHERN asks where her contact is supposed to meet, and SHIELDS says that he will be picked up from the train.

43.     On August 15, 2023, law enforcement recovered Vehicle 263 at Mayfair Mall, located at 2500 North Mayfair Road, Wauwatosa, Wisconsin. The driver of the vehicle was Justin Northern, and the passengers included Michael Northern. Justin Northern had over $7,300 in cash

12

on his person. Justin Northern said that his sister arranged the purchase, and he purchased Vehicle 263 from a black male at the train station for $6,000 cash. An officer took photographs of the door sticker and window VIN showing a fraudulent VIN 2C3CCABG8NH128000.

44. Shortly afterwards at 9:43 p.m., SHIELDS and Tashay NORTHERN discuss the police recovery of Vehicle 263 and the arrests. SHIELDS says: "….And we gone get another I'll let you know asap." A few days later on August 18, 2023, NORTHERN asks SHIELDS: "Would He Be Able To Get Some Else" and asks for something low key – "Some He Won't Keep Getting Stopped In Cause That Was Two Down The Drain."

45. During the communications about Vehicle 263, TASHAY NORTHERN was using call number 708-341-9108.

46. TASHAY NORTHERN has shown an association with SHIELDS dating back to at least October 2021 when she purchased Vehicle 139A from SHIELDS, and continued for multiple years. Based on information from SHIELDS's phone, NORTHERN had extensive conversations with SHIELDS by call and text. However, the conversations on SHIELDS's phone only span from July 2022 through October 2023. Since NORTHERN has had the same number since 2019, it is believed that a review of her phone content may provide further details regarding their relationship that predates the communications on SHIELDS' phone, and with other co-conspirators, including NAKIYA WRIGHT, Justin Northern, and others that post-date the communications on SHIELDS's phone. In addition, information from NORTHERN's phone will likely provide investigators with further communications between NORTHERN, her brothers, and others regarding their involvement in other stolen vehicles that NORTHERN was involved in. I also know that NORTHERN has engaged in Cash App transactions with co-conspirators, which are often conducted using a cell phones such as the Device, and has sent and received content including

13

images relating to the making and transportation of fake vehicle titles and offering stolen vehicles for sale via cell phone such as the Device. As described above, NORTHERN also exchanged emails with SHIELDS's email account relating to stolen vehicles, and I know that email accounts are often accessed using cell phones such as the Device.

47.     The Device is currently in the lawful possession of the FBI. It came into the FBI's possession in the following way: A warrant was issued for TASHAY NORTHERN's arrest based upon the indictment. On June 26, 2025, NORTHERN was arrested by law enforcement at her residence located at 1460 32nd Street South, #502, Fargo, North Dakota. Search incident to that arrest and an inventory search, the Device was recovered from TASHAY NORTHERN. Therefore, while the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

48.     The Device is currently in storage at FBI's Milwaukee Field Office, which is located in the Eastern District of Wisconsin.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

**TECHNICAL TERMS**

49.     Based on my training and experience, I use the following technical terms to convey the following meanings:

     a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call

14

log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices

15

and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

50.  Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices

16

of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

51.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

52.     There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

    a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.    Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

    d.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

17

53. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18

f. I know that when an individual uses an electronic device to sell and purchase stolen vehicles, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

54. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

55. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

56. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

19

# ATTACHMENT A

The property to be searched is a pink Apple iPhone assigned FBI Evidence Number 1B224 ("Device")." The Device is currently located at the FBI's Milwaukee Field Office, which is located in the Eastern District of Wisconsin.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

All records on the Device described in Attachment A that relate to violations of 18 U.S.C. §§ 371, 511, 514, 1001, 1028A, 1956, 2312, 2313, 2321, and 2(a) and involve TASHAY NORTHERN, DIAUNTE D. SHIELDS, LASHAWN DAVIS, JR., BRANDON MULLINS, JUSTIN NORTHERN, MICHAEL NORTHERN, and other co-conspirators known and unknown, since January 2019 including:

   a. Information about stolen vehicles, including but not limited to photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to vehicle identification numbers and titles, records related to the transportation of vehicles, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme;

   b. Information about the existence, scope, members, and steps taken in furtherance of the conspiracy;

   c. Information about false statements made by Tashay Northern on or about June 26, 2025;

   d. types, amounts, and prices of vehicles purchased, sold, and transported, as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of stolen vehicles (including names, addresses, phone numbers, or any other identifying information);

   f. any information recording the subjects named above's schedule or travel from January 2019 to the present;

   g. Evidence indicating how and when the device, call number, and email address was accessed or used, and by whom, to determine the geographic and chronological context of device access, use, and events relating to the crimes under investigation and to the account owner; and

   h. Evidence indicating the device owner's state of mind as it relates to the crimes under investigation.

   2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2